## TILTON SAFE CO. *v*. TISDALE.

*Sale. Implied Warranty. Rescission. Evidence. Contract.*

Defendant gave plaintiffs, manufacturers of safes, a written order for a "No. 4 safe with combination lock," and plaintiffs sent a safe answerable to the order. *Held*, that there was no *implied* warranty as to the merits or usableness of the lock, but only that it should be such as the order called for.

When the right of rescission exists, it must be exercised within a reasonable time, or the property becomes the purchaser's, and he must pay for it according to the contract, subject to the right to recoupe such damages as he has sustained by reason of the fraud of the vendor.

Said order was for the safe to be delivered "as soon as possible," and it was delivered in a few days. Defendant claimed that it was second-hand and defective, and as

tending to prove this, offered to show that when he gave the order, plaintiffs' agent said that plaintiffs manufactured all safes after they were ordered, and that defendant would not get his for five or six weeks. *Held*, inadmissible.

Plaintiffs wrote defendant a letter, giving times for payments towards the safe different from the times named in the order; but it was *held*, that as defendant declined to act upon the letter, he was left to stand upon the order.

GENERAL ASSUMPSIT. Plea, the general issue, trial by jury, and verdict for plaintiffs, December Term, 1874, POWERS, J., presiding.

Plaintiffs were dealers in safes known as the Tilton, McFarland safe, and on the 18th of February, 1873, one Jacobs, plaintiffs' traveling agent and salesman, negotiated a sale of one of plaintiffs' safes to the defendant, at St. Johnsbury, and on that day took an order for a safe as follows :

"*Messrs. Tilton, McFarland :*—Please send me as soon as possible, 1 No. 4 safe with combination lock, for which I agree to pay $150 as follows; $75 in six months from shipment, and $75 in nine months from shipment, free of interest.

St. Johnsbury, Vt., Feb. 18, '73.        GEO. H. TISDALE."

This order was written by Jacobs, signed by defendant, and forwarded by Jacobs to plaintiffs in Boston, and within a few days plaintiffs shipped a No. 4 safe with combination lock of plaintiffs' make, to the defendant, and the same was received by defendant on the 26th or 27th of February, and placed in his store.

This suit was brought to recover the first instalment of the purchase money, and payment was resisted on the ground that plaintiffs had practiced a fraud on defendant in the sale, by delivering a second-hand safe, cracked near one of the hinges to the door, with a broken axle or pivot to one of the trucks, and with a combination lock that was either imperfectly constructed, or broken so that it was of no value. The main controversy was as to the condition of the lock. All the above-named defects were discovered by the defendant, as he testified, within a day or two after the delivery of the safe, and the parties had some correspondence relative to the lock, and in March the lock was taken off and sent to plaintiffs for their inspection, and they examined it and pronounced it perfect in all respects. The plaintiffs' evidence tended to show that the safe and lock were perfect, new, and in all respects

in good working order ; the defendant's evidence tended to show the contrary.

It appeared from the evidence on both sides, that the lock was so constructed that no person, unless instructed in its mechanism and acquainted with the manner of operating it, could lock or unlock it ; that the lock was operated by means of a knob that revolved a dial bearing numbers from one to one hundred, which showed on the front of the door, and that on the same axle with the dial, and inside the door, were three wheels, each having a slot in the edge or circumference, and that it could only be unlocked when the slots were in line, so as to receive a clog or lever, and by the dropping of the lever into the slots, the bolts were free, and the door could be opened. It appeared that defendant had no acquaintance with the working of combination locks, and was unable to open it by the aid of printed instructions which accompanied the safe, and which purported to instruct purchasers how to operate the lock.

The defendant's evidence further tended to show, that he procured other parties who had had experience with combination locks, only one of whom, however, had any acquaintance with the plaintiffs' lock, but all had locks similar to the plaintiffs' in principle, and that these parties were unable to operate the defendant's lock. Jacobs testified that in March, he saw the safe in defendant's store, and found that a screw on the backside of the lock that fastened the cap or lid which formed the backside of the lock, was turned too tight, and thus impinged upon one wheel, and that by loosening it a trifle, the wheel was relieved, and the lock then worked without difficulty. The plaintiffs' testimony tended to show that this difficulty was one that any person of ordinary intelligence, and with ordinary attention to the instructions, would observe and remedy, and that it was no defect in the lock itself. It appeared that the defendant, during the time he had the safe in his store, occasionally kept his books and papers in it, and occasionally could lock and unlock it.

On trial, the defendant offered to show that at the time he ordered the safe, Jacobs told him the company always manufactured their safes after receiving an order, and that it would be five or

six weeks before this safe could be delivered.  This evidence was excluded, to which the defendant excepted.  The defendant kept the safe till sometime in October, 1873, and for several weeks after the correspondence between the parties had terminated, and then shipped it back to plaintiffs, but plaintiffs declined to receive it.

Defendant requested the court to charge the jury, that there was an implied warranty on the part of plaintiffs, that the lock was such a lock as a person of ordinary skill and capacity could lock and unlock ; but the court refused so to charge, but charged that there was no implied warranty that a person of ordinary skill and capacity could operate the lock ; that it was the duty of the plaintiffs, upon the receipt and acceptance of defendant's order, to ship, in accordance with such order, one of their No. 4 safes with combination lock that would be merchantable, both as respected the lock and the safe ; that the order described a certain kind of safe, and the plaintiffs should act in good faith, and practice no fraud in complying with such order, but that whether the defendant had or could acquire the skill to operate the lock, was a risk that he assumed when he ordered the safe, and that plaintiffs were bound to ship a safe that had no inherent defects or imperfections so far as they knew, and one that in the exercise of good faith on their part, they supposed to be, and one that in fact was, a safe that would pass in the market as merchantable.  To the refusal to charge as requested, and to the charge as given, the defendant excepted.

The court further charged, that if plaintiffs practiced a fraud on defendant, by delivering him a safe that they knew was imperfect in the structure of the lock, or in any other respect, the defendant, although he had returned the safe, would have the right to urge such fraud in defence to this action, and would be entitled to have deducted from the purchase money, whatever sum the safe delivered was worth less than the safe ordered ; but that if the difficulty with the lock was such a difficulty as plaintiffs claimed —simply a fault in the adjustment as testified to by Jacobs, and a fault that, with ordinary attention and skill, could be remedied by the operator—it was not a defect that could be set up in an-

swer to this action. To this part of the charge relating to the character of the defect in the lock, the defendant excepted.

The court further told the jury that if plaintiffs recovered, they would be entitled to recover interest on the instalment from the expiration of the term of six months from the date of shipment of the safe ; to which the defendant excepted.

On February 27, 1873, plaintiffs wrote defendant as follows :

Happening to have a safe in stock made as you ordered, we gave it a fresh coat of varnish, and shipped it to you yesterday, supposing you would be pleased to get it sooner than you expected. We made bill and drafts which we now inclose, so as to make payments as you agreed with Mr. Jacobs, viz : six and nine months from April 1, 1873.

*Harry Blodgett*, for the defendant.

The testimony offered by the defendant, to show what Jacobs said at the time the order was given, was improperly excluded. It was not inconsistent with the written order, but simply showed what the parties understood by the words, " as soon as possible." *Holbrook* v. *Holbrook*, 30 Vt. 432 ; *Winn* v. *Chamberlin*, 32 Vt. 318 ; *Wing* v. *Gray*, 36 Vt. 261 ; *Rugg* v. *Hale*, 40 Vt. 138 ; *Randall* v. *Kelsey*, 46 Vt. 158.

The court should have charged that plaintiffs were bound by the contract to send a safe that persons of ordinary skill and capacity could lock and unlock.

The court erred in charging, that if the difficulty with the lock was simply a fault in its adjustment, as testified to by Jacobs, it was not such a defect as could be set up as a defence to this action. Plaintiffs were bound to send defendent a safe *perfect in every respect*.

Plaintiffs can only recover interest from April 1, 1873, as per the terms of their letter.

*Elisha May*, for the plaintiffs.

The order calls for a safe " as soon as possible," and makes no other mention as to time when plaintiffs were to deliver it. That order, when accepted by plaintiffs, became the contract by which both parties were bound, and affords the only evidence of the sale. It specifies the *kind* of safe sold, and the time *when* it was

to be delivered. The phrase, " as soon as possible," is not a technical nor ambiguous phrase. 2 Parsons Cont. 497. This phrase merits a different construction in this action than it would if the defendant was prosecuting his suit against the plaintiffs for neglecting to furnish him a safe within the time specified in the written contract. In such a case, the plaintiffs could only claim a *reasonable time*. *Atwood* v. *Emery*, 1 C. B. N. S. 110 ; *Davis & Aubin* v. *Bradley*, 24 Vt. 55. Again, the safe was accepted by the defendant, and it is now too late for him to question the delivery before the time contracted. Hilliard Sales, 215 *et seq.* ; *Flagg* v. *Dryden*, 7 Pick. 52.

The law does not imply that the purchaser could operate the lock, but it does require that the safe should be of merchantable quality. Hilliard Sales, 335, s. 4 ; 338, n. 6 ; 351. The following cases fully establish the doctrine laid down by the court below. *Elkins* v. *Parkhurst*, 17 Vt. 105 ; *Hart* v. *Hammett*, 18 Vt. 127 ; *Goss* v. *Turner*, 21 Vt. 437 ; 24 Vt. 114 ; 40 Vt. 588 ; 1 Parsons Cont. 583, 587, note. As the contract itself contains no warranty, the law presumes none. *Reed* v. *Wood*, 9 Vt. 285 ; *Bond et al.* v. *Clark*, 35 Vt. 577 ; *Chanter* v. *Hopkins*, 4 M. & W. 399.

The jury has found that there was no fraud practiced by the plaintiffs in the sale of the safe, and that there was " no lack of good faith " on the part of the plaintiffs ; that the defect in the lock was not an inherent one, but was merely a fault in its adjustment, and that this fault might have been remedied by a person of ordinary care and skill. This court has never permitted a party to recoupe damages in such a case as this. The jury has found that the safe sent was such as the order called for, and that there was no lack of good faith. *Bragg* v. *Bradford*, 33 Vt. 35 ; *Eddy* v. *Clement*, 38 Vt. 486.

The first installment was due in six months from February 18, 1873 ; hence the plaintiffs were entitled to interest from the expiration of the six months. 22 Vt. 437 ; 9 Pick. 368, 388 ; 9 Johns. 71.

The opinion of the court was delivered by

BARRETT, J.[1] "The plaintiffs shipped a No. 4 safe with combination lock of their make to the defendant." This was so far a strict

Tilton Safe Co. *v.* Tisdale.

compliance with the defendant's order.    It was the very thing the terms of the order called for.    There was no implied warranty as to the merit or usableness of the lock, but only that it should be answerable to the call of the order.    If it did not answer that call, or if the plaintiffs practiced a fraud in the matter of the body of the safe or the lock, it was the right of the defendant to return the safe as soon, within reasonable time, as the defect was discovered.    It was not returned for several months.    Of course such return could not operate as a rescinding of the purchase.    The safe became the property of the defendant, with the duty on him to pay for it according to the terms of the trade, subject to such recoupment as he might be entitled to have on the score of any fraud practiced on him by the plaintiffs.

There was no question but that the lock *in kind* answered the order, nor was there as to the safe.    The matter then stood solely on the question whether the alleged fraud was committed by the plaintiffs.    This question was submitted to the jury in an unexceptionable manner, and was determined in favor of the plaintiffs.

As to the excluded evidence, it is difficult to see how whether the safe was on hand at the time the bargain was made, or was made afterwards, had any bearing as to what was the actual condition of the safe when delivered to and received by the defendant. No evidence appears to have been given that it was a second-hand safe.    Whatever defects were in it indicating fraud practiced by the plaintiffs, were available to the defendant without regard to the time when it was made.    And they were neither more nor less by reason of the time when it was made.    As that evidence had no bearing on the actual condition of the safe, and was outside of the written contract, it was properly excluded.

The court were not in error as to interest.    As the defendant declined to act on the letter of plaintiffs of February 27th, he was left to stand on the terms and effect of his order.

Judgment affirmed.